GEORGE W. PARKER & another *vs.* JAMES W. CONVERSE.

A deed of land to a trustee of a married woman, in trust for her separate use, and, after her death, " to descend to her children," gives the children vested remainders, either legal or equitable, and capable of alienation.

A deed of land, reciting a sale thereof to a trustee of a married woman, " and for the sole use of her and her heirs," and containing a grant and habendum to the trustee, his heirs and assigns, vests a fee in him.

A trust created by deed for the benefit of a married woman and her children may be ter-minated, after the death of her husband, by deeds from her and her children.

Upon the death of a trustee under a will, and the appointment of a new one in his stead by the probate court under Rev. Sts. c. 69, § 8, the trust estate vests in the new trustee.

ACTION OF CONTRACT, praying relief in equity, under *St.* 1853, *c.* 371, to enforce the specific performance of an agreement in writing, dated May 4th 1854, for the conveyance from the plain-tiffs to the defendant, by deed of warranty, and free from all in-cumbrances, of a parcel of land, upon certain terms, which the defendant had refused to comply with, although the plaintiffs had duly tendered a deed according to the agreement.

The answer stated the following facts, which were admitted by the plaintiff to be true : The land formerly belonged to John Parker of Roxbury. Part of it was duly sold by his adminis-trator, Joseph Curtis, under license from the probate court, to Humphrey Brook Gwathney, " as he is trustee of Julia Ann Mor-

ton, wife of John A. Morton," and conveyed by deed dated August 3d 1830, reciting such sale, to Gwathney " in trust, as aforesaid, for the sole and separate use and benefit of her, the said Julia Ann, and in no case liable to the control of her husband, and, after the death of said Julia Ann, to descend to her children ; " to have and to hold the same " to him, the said Humphrey B. Gwathney, in trust as aforesaid." The fee of this part of the land, if not conveyed by this deed, was vested in the plaintiffs.

Said administrator sold the remainder of the land in question in like manner to said Gwathney, and gave him a deed thereof dated December 7th 1830, reciting the sale to him, " trustee of Julia Ann Morton, and for the use of the said Julia Ann and her heirs," and granting such land " unto him the said Humphrey Brook Gwathney, trustee as aforesaid, his heirs and assigns," to have and to hold the same " to him the said Humphrey Brook Gwathney, trustee, his heirs and assigns, forever, to his and their use and behoof forever."

On the 10th of April 1831 Gwathney, and Morton and wife, each executed to Abigail Parker, singlewoman, a quitclaim of part of the land described in said deed. Abigail Parker died on the 3d of November 1838, and by her will devised her real estate to David Dudley, upon the use and trust, when the plaintiffs, or the youngest survivor of them, should come of age, to convey it to them or their survivors or survivor, in fee, in equal shares. In 1841, Dudley having died, William Whiting was appointed by the probate court trustee under said will; and afterwards Whiting, as such trustee, and Julia A. Morton and her children, her husband being dead, executed quitclaim deeds of this land to the plaintiffs, who were then of age ; and some, but not all, of the heirs of Dudley did the like. Julia A. Morton is still living, but without possibility of future issue.

The answer then averred that the trusts mentioned in the deeds to Gwathney could not be extinguished by the conveyances from him and from Mrs. Morton and her husband and children, but the land was still subject to these trusts ; that the interest of said children in the land was not vested, but contin-

gent upon their surviving their mother, and they, during her life-time, had no alienable interest therein; and that therefore the land was not free from incumbrances, and the plaintiffs were not seized thereof.

*H. C. Hutchins,* for the plaintiffs.

*J. D. Ball,* for the defendant.

BIGELOW, J.   It is unnecessary to consider and determine the question, whether the deed from Curtis to Gwathney of August 3d 1830 conveyed a fee, or only a life estate, in the premises granted; because it is admitted, that if it created only a life estate in the grantees, the reversion remained in the grantor, and is now vested in his heirs, the plaintiffs, who are ready and offer in the bill to convey all their right and title therein to the defendant.   The single question therefore, which arises on the construction of this deed, is, whether the interest, whatever it was, which was thereby conveyed to the children of Julia Ann Morton, was a vested interest in them, capable of alienation during the lifetime of their mother, or whether it was contingent, depending on the event of their surviving their mother, to which they would not be entitled until her death, and, for that reason, not vested in them so as to be transferred by their deeds to the plaintiffs.   Upon this point, we can have no doubt. The terms of the grant bring it directly within the elementary definition of a vested remainder.   The estate in the children is fixed and absolute, and remains to them after the life estate conveyed to the trustee for the use of their mother is determined.   It is a present grant in trust for the life of the *cestui que trust,* and upon her death to the children.   Their estate is dependent on no contingency.   It cannot be altered or changed by any intermediate event; no other right or interest can intervene between the life estate vested in the trustee and the estate granted to them.   It becomes vested by force of and at the time of the grant.   The particular estate is defined, and is to come to a natural termination before the remainder takes effect in enjoyment.   The latter is vested at the time of the conveyance, and is not affected in its nature or quality by the consideration, that the time when it may come into possession is indeterminate and

uncertain. 2 Cruise Dig. tit. 16, *c.* 1, §§ 36, 39. 4 Kent Com. 6th ed.) 203. *Dingley* v. *Dingley*, 5 Mass. 535. *Nash* v. *Cutler*, 16 Pick. 491. *Fay* v. *Sylvester*, 2 Gray, 171. Nor does it change the construction of the deed, in this respect, that the remainder created by it may be such as to open and let in children born subsequently to the time of the grant. It is one of the qualities of a vested remainder that it opens, when necessary by the terms of its creation, to let in after born children. *Dingley* v. *Dingley*, 5 Mass. 535. *Right* v. *Creber*, 5 B. & C. 866, and 8 D. & R. 718. All objection on the ground of possibility of future issue of Julia Ann Morton being waived, it follows that the interest which vested under this deed in her children, now living, was conveyed by their deeds to the plaintiffs.

No question was raised at the bar, nor have we deemed it material to determine, whether the interest of the children, under the deed in question, was legal or equitable. It may be that the true construction of the grant is, that it was a conveyance of the legal estate to the trustee, to hold during the life of the mother, and, on her death, to convey it to the children. If this be so, it does not change the result; because the rules of law are the same, whether applied to legal or equitable estates in land. In either case it was a vested interest, and capable of alienation.

The question which arises on the second deed from Curtis to Gwathney, bearing date December 7th 1830, seems to be settled by the principles laid down and illustrated in *Ayer* v. *Ayer*, 16 Pick. 327. The plain intent of the parties to the deed was to secure the estate to the sole and separate use of Julia Ann Morton, free from the control and interference of her husband. If the language of the deed was equivocal, it would be the duty of this court to construe it as creating a technical trust, and not as a use executed in the wife under *St.* 27 H. 8, *c.* 10; because the former construction would most effectually carry out and secure the main purpose of the grant, by placing the estate wholly beyond the control of the husband. But this conveyance is to Gwathney as trustee, his heirs and assigns; clearly

vesting the fee in him. If the words of the preamble, taken by themselves, would create a conveyance to uses, by which the estate would become vested in the wife, they cannot control the express words of the grant and habendum, by which the estate is granted to Gwathney, without any words which can be construed to vest any legal estate in Mrs. Morton. Construing the whole deed together, it was a conveyance to Gwathney in fee, to be held by him in trust for the use and benefit of Mrs. Morton and her heirs. That it was the intent of the parties, by this conveyance in trust, to secure the property to Mrs. Morton, free from the interference and control of her husband, is manifest from the fact, that Gwathney held other property in trust for Mrs. Morton; that she was a married woman; that the other property so held in trust by Gwathney was conveyed to him for the very purpose of being beyond the reach and control of her husband; and that the fee of the estate in question was conveyed to him in his capacity as trustee of Mrs. Morton, without a distinct declaration of the particular trusts on which it was to be held by him; thus clearly referring to the trusts already subsisting, as declaring the purposes for which the property conveyed by this deed was to be held by him. It results, from this view of the conveyance to Gwathney, that the premises thereby granted were vested in him in fee. By the general rules applicable to the conveyance of real property, he had a right to pass his title to another by deed. *Prima facie,* his grantee would take the entire legal interest in the estate. *Goodrich* v. *Proctor,* 1 Gray, 569.

The only remaining question arising on this part of the case is, whether the trust created by this deed, as well as by that of August 3d 1830, is not still in existence, so that the same can be charged on the real estate thereby conveyed; or else that the purchasers thereof may be compelled to see that the purchase money paid therefor is duly applied in the execution of the trusts for which the land in controversy was originally conveyed. Under the circumstances of this case, we have no occasion to determine the abstract question, whether a good title to real estate held in trust can be conveyed to a third person by deeds

from the trustee and *cestui que trust.* The sole object of the trust, in the present case, was to secure the property conveyed to Gwathney for the benefit of Mrs. Morton, so that the same should be free from the interference and control of her husband. This purpose has been accomplished. The death of her husband rendered a longer continuance of the trust unnecessary, and it was therefore competent for the parties interested to terminate it by conveyances of the trust estate. By the deeds therefore from Mrs. Morton and her children, made after the decease of her husband, conveying the same estate which was conveyed by Gwathney the trustee, in confirmation of his deed to Abigail Parker in 1831, the trust was released and extinguished, so far as the premises in controversy were comprehended within it; and the plaintiffs now held the same free from any claims on account thereof.

It is clear that no conveyance from the heirs of Dudley was necessary to make a good title to the estate in the plaintiffs. He held it only as trustee under the will of Abigail Parker. Upon his death, and the appointment of a new trustee in his stead by the probate court, the title became vested, under Rev. Sts. *c.* 69, § 8, in the latter, who has conveyed it to the plaintiffs in the due execution of the trusts established by Abigail Parker's will.

*Judgment for the plaintiffs.*